UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YAQUELIN VARGAS,

                Plaintiff,

    v.

THE CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT ARTICLE II MEDICAL
BOARD,

                Defendants.

**Civil Action No. 15-cv-8016 (ER)(RLE)**

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER APPLICATION
FOR LEAVE TO SUPPLEMENT HER COMPLAINT**

Respectfully Submitted,

Meenan & Associates, LLC
By: Colleen M. Meenan, Esq. (CM 7439)
*Attorneys for Plaintiff*
299 Broadway, Suite 1310
New York, NY 10007
(212) 226-7334

**TABLE OF CONTENTS**

Table of Authorities ...................................................................................................ii-iv

Preliminary Statement...............................................................................................1

Procedural History ....................................................................................................1

Relevant Facts...........................................................................................................2

Legal Arguments .......................................................................................................6

    Point I: The Allegations That Vargas Sets Forth In Her Supplemental Complaint Satisfy The Article III Standing Requirements ...............................................................6

        A.  Vargas Is Currently Subject To The Revised Hearing Standard Which She Seeks To Timely Challenge In A Supplemental Complaint To Make Her Relief In This Action Complete.......................................................................8

        B.  Vargas's Claim That The 2015 Hearing Standard Is Discriminatory Is Not Futile ..........................................................................................................9

    Point II: Vargas Has Properly Exhausted Her Administrative Remedies With the EEOC Relating To Disability Discrimination And Retaliation........................................13

Conclusion................................................................................................................16

## TABLE OF AUTHORITIES

**Cases**                                                                                                                      **Page(s)**

*Alliance for Environmental Renewal, Inc. v. Pyramid Crossgates, Co.*,
    436 F.3d 82 (2d Cir. 2006)......................................................................................6

*Almendral v. New York State Office of Mental Health*,
    743 F.2d 963 (2d Cir. 1984)....................................................................................16

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001) .....................................................................................8

*B.K.B. v. Maui Police Dept.*,
    276 F.3d 1091 (9th Cir. 2002) ................................................................................16

*Bates v. United Parcel Service, Inc.*,
    465 F.3d 1069, 1077 (9th Cir. 2006),
    *rev'd en banc,* 511 F.3d 974 (9th Cir. 2007)..............................................passim

*Brown v. Puget Sound Elec. App. & Train. Trust*,
    732 F. 2d 726 (9th Cir. 1984) .................................................................................16

*Butts v. City of New York*,
    990 F.2d 1397 (2d Cir. 1993)...........................................................................1, 15

*Foman v. Davis*,
    371 U.S. 178 (1962).........................................................................................1, 8

*Hawkins v. 1115 Legal Serv. Care*,
    163 F.3d 684 (2d Cir. 1988)....................................................................................15

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 560-61 (1992) .........................................................................1, 7, 8

*Montgomery v. Chertoff*,
    03 CV 5387 (ENV)(JMA), 2007 WL 1233551 (E.D.N.Y. April 25, 2007.......................13

*Muller v. Costello*,
    187 F.3d 298 (2d Cir. 1999)....................................................................................10

*Parker v. Columbia Pictures*,
    5204 F. 3d 326 (2d Cir. 2000).................................................................................10

## TABLE OF AUTHORITIES

**Cases**                                                                   Page(s)

*Payne v. N.Y.C. Police Dep't,*
    863 F. Supp. 2d 169 (E.D.N.Y. 2012) ........................................................ 12-13

*Ricciuti v. N.Y.C. Transit Auth.,*
    941 F.2d 119 (2d Cir. 1991) ........................................................................... 9

*Richardson Greenshields Sec., Inc. v. Lau,*
    825 F.2d 647 (2d Cir. 1987) ....................................................................... 8-9

*Romanello v. Intessa, S.p.A.,*
    22 N.Y.3d 881 (2013) ................................................................................. 10

*Sheehan v. Purolator Corp,*
    676 F.2d 877 (2d Cir. 1981) ........................................................................ 14

*State Teachers Retirement Bd. v. Fluor Corp.,*
    654 F.2d 843 (2d Cir. 1981) ...................................................................... 8-9

*Stone v. City of Mount Vernon,*
    118 F.3d 92 (2d Cir. 1997) .......................................................................... 12

**Federal Rules of Civil Procedure**
Fed. R. Civ. P. 15(a) ......................................................................................... 8

**Statutes**
Administrative Code of the City of New York [New York City Human Rights Law]
§ 8-101 ............................................................................................................ 10

Administrative Code of the City of New York [New York City Human Rights Law]
§ 8-102(16) ..................................................................................................... 10

29 C.F.R. § 1630.2(h) ....................................................................................... 10

29 C.F.R. § 1630.2(j)(3) .................................................................................... 10

29 C.F.R. § 1630.2(m) ...................................................................................... 11

29 C.F.R. § 1630.2(n)(1) ................................................................................... 12

29 C.F.R. § 1630.2(n)(3)(i)-(vii) ....................................................................... 12

## TABLE OF AUTHORITIES
### (Continued)

**Statutes**                                                              **Page(s)**

42 U.S.C § 12112(a)............................................................................................10, 12

42 U.S.C § 12112(b)(6) ...........................................................................................11

42 U.S.C. § 12117 ...................................................................................................13

42 U.S.C. § 2000e ..............................................................................................13-14

42 U.S.C. § 2000e-5(f) (1)........................................................................................14

**Other Legal Authorities**

*Phillips and Carione v. City of New York, et al*, 1:11-cv-6685 (KPF)(S.D.N.Y.).......................3

2008 House Judiciary Committee Report ..........................................................................10

H.R. Rep. No. 101-485 (III) (1990), reprinted in 1990 U.S.C.C.A.N. 445,
454-55 annexed as an Addenddum....................................................................................11

## Preliminary Statement

Plaintiff Yaquelin Vargas [Vargas] is a hearing impaired police officer who commenced this employment discrimination action challenging a New York City Police Department hearing standard which prohibited the use of hearing aids. After Vargas filed her complaint, the NYPD revised its hearing standard, eliminating the outright ban on hearing aids, while, nonetheless, maintaining a discriminatory hearing standard which adversely effects hearing disabled officers, such as Vargas. For this reason, Vargas seeks to supplement her complaint to include a challenge to the revised hearing standard. As demonstrated below, there is no impediment to the Court exercising its discretion and granting plaintiff's request as she has standing to challenge the revised hearing standard, see, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); administrative exhaustion of the relevant disability claim is complete, see *Butts v. City of New York*, 990 F.2d 1397, 1402-03 (2d Cir. 1993); and this application is timely and not futile and an amendment of the complaint will not prejudice the defendants. See, *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## Procedural History

Vargas filed her initial complaint on October 13, 2015 [Dkt. 5] and the defendant parties filed an answer on December 7, 2015 [Dkt. 17]. On December 10, 2015, and before the parties appeared for an initial FRCP 26(f) scheduling conference before the Court, the Police Commissioner issued a revised hearing standard which Vargas seeks to challenge as discriminatory.

Therefore, at the initial scheduling conference on May 4, 2016 and pursuant to the Court's Individual Rules of Practice, plaintiff sought the Court's permission to file the instant motion

seeking leave to file a supplemental complaint to add a claim challenging the revised hearing standard. The Court granted plaintiff's request, having been advised that the defendant parties would not consent to plaintiff's request absent Court intervention.

## Relevant Facts

All the facts discussed below are taken from the proposed supplemental complaint attached to the Declaration of Colleen M. Meenan as Exhibit 1 unless otherwise indicated. All exhibits referenced in this application are attached to Meenan's declaration and identified as "Meenan Dec. Ex. ____", followed by the relevant exhibit number being referenced.

Vargas began her police service in 2007 and on September 13, 2011 sustained ringing and pain in her right ear while participating in a scheduled firearms training exercise, immediately notifying a training supervisor about her injury. Thereafter, Vargas sought medical treatment and was diagnosed with severe-to-moderately severe sensorineural hearing loss in her right ear. As a consequence, Vargas was removed from full duty assignment by the NYPD Medical Division on October 5, 2011, and placed on restricted duty. While on restricted duty, Vargas is not permitted to carry a firearm, perform any patrol duty assignments, take promotional examinations or earn the same level of overtime compensation she did while assigned to patrol. Vargas is currently assigned to an office, remotely monitoring security cameras at public housing locations, which is the sole function she has performed for almost the last five years.

As a consequence of her hearing disabling injury in September 2011, Vargas was subject to the NYPD medical protocols then in place for officers who sustain a hearing injury as follows. After reporting the injury, Vargas was directed to appear at the NYPD Medical Division for a pure tone audiometric test whereby her hearing was tested by a clinician measuring her ability to hear

2

tones at certain designated levels of intensity, in different frequencies, using earphones.  After her test results confirmed a unilateral hearing loss (hearing loss in her right ear), the NYPD Medical Division directed Vargas to be evaluated by the Center for Hearing and Communication [CHC], a private organization offering audiological services to the hearing disabled.  Thereafter, CHC assessed and evaluated Vargas, recommending in February 2012 that Vargas had hearing sufficient to perform her job with the use of a hearing aid in her right ear. Upon learning that Vargas required the use of a hearing aid,  the NYPD Medical Division began an internal administrative process to involuntarily separate Vargas from employment because of a then existing NYPD policy which prohibited the use of hearing aids by police officers.   The NYPD gave absolutely no consideration to the fact Vargas was capable of performing her job while wearing a hearing aid.

While the above described events were evolving for Vargas, a separate case challenging the NYPD's hearing standard was unfolding in the district court.  See, *Phillips and Carione v. City of New York*, *et al*, 1:11-cv-6685 (KPF).   In March of 2015, this case was settled with the City agreeing to review its hearing standard to ensure that police officers with hearing loss are individually assessed to determine whether or not they are capable of performing their job with or without a hearing aid.  (Meenan Dec. Ex. 2 ¶ 3).  In addition, it was agreed under the terms of the settlement that hearing disabled officers, such as Vargas, "[would] be permitted to be tested wearing hearing aids at the Center for Hearing and Communication and [would] be allowed to continue working if they meet the hearing standards with or without hearing aids." (*Id*. ¶ 4).

Relying on this agreement, Vargas was tested at CHC in April of 2015, again demonstrating she had hearing sufficient to perform her job with a hearing aid.  CHC also recommended that

Vargas repair or replace her hearing aid. Vargas provided these test results to the NYPD Medical Division, but was not reinstated to full duty and remains on restricted duty assignment. During the period of 2012-2015, Vargas also experienced a number of other medical conditions, unrelated to hearing loss, which caused her to incur sick leave. Nonetheless, Vargas has sufficiently recovered and has been medically cleared by her treating doctors to return to full duty assignment, but the NYPD Medical Division has continued her restricted duty status because of her hearing disability.

In December 2015, the NYPD announced the revision of its hearing standard which is entitled: "Testing Requirements for NYPD Auditory Assessments For Those Members Who Did Not Pass The Initial Screening." (Meenan Dec. Ex. 3)[1]. As detailed in the "General Procedures" section, only hearing disabled officers are subject to the revised NYPD hearing standard:

> "[w]hen the Department becomes aware that an incumbent uniformed member of the service ("UMOS") may have impaired hearing that may adversely affect his or her ability to perform the essential duties and function of a full-duty uniformed member of the service, said member, in order to be allowed to continue working in full-duty status, must meet the Department's required hearing standards, with or without the use of a hearing aid device. "

(See Meenan Dec. Ex. 3 "General Procedure" section).

In addition, the revised standard indicates: "[i]nitial screening will be completed by the Medical Division and the incumbent may not wear a hearing aid for this testing." (*Id.*) The revised standard further provides that for those members who "fail to meet the required medical hearing standard [     ] without the assistance of a hearing aid" they may elect to be tested at an outside

---

[1] Exhibit 3 is the entire letter sent to Judge Failla by defense counsel Profeta. Attached as Exhibit A to this letter is the revised hearing standard detailed in a letter dated December 10, 2015 and addressed to counsel Profeta by Stephanie Zimberg, an attorney with the NYPD.

clinic at their own expense with or without a hearing aid, except if the injury causing the hearing loss is job related and, in that instance, the NYPD may pay the cost of the outside testing. The standard further specifies that: "If the incumbent is tested wearing a hearing aid device it must be the same hearing aid device that the incumbent would use while on duty, without modification." (*Id.*)

For those officers who opt to be evaluated outside the police department, the officer is required to be tested and assessed according to defined clinical testing methods, all designed to determine both the source and extent of the hearing loss.  (Meenan Dec. Ex. 3). After all of the required testing is completed in the manner prescribed, the officer may submit the documented test results to the Medical Division for its consideration which "will [then] provide each incumbent an individualized assessment of his or her auditory ability as it relates to the essential functions necessary for full duty uniformed service."  (Meenan Dec. Ex. 3).

The revised hearing standard further provides that the "individualized assessment" will be made by the Medical Division in consultation with "expert(s) in the field, and shall be consistent with the job-related functions and critical tasks of a UMOS." (*Id.*) The revised standard further notes and restricts the type of hearing aids that an officer can use, requires written permission before an officer can change an approved hearing aid and requires an officer "to provide, every two years while serving as a full duty [police officer], written certification indicating that there has been no deterioration in hearing ability or indicating the changed level of hearing . . ." (*Id.*) An officer who fails to comply with these requirements is subject to "a change of duty status and/or disciplinary action." (*Id.*)

As a consequence of the above-noted hearing standard, on April 27, 2016 Vargas was directed to appear at the NYPD Medical Division to be seen by Deputy Chief Surgeon Ted Reich, M.D. (Reich) who directed Vargas to be tested and evaluated by CHC.  Vargas was also directed by Reich to be assessed by her private treating physician to determine whether or not she can wear a hearing aid.  As a result, Vargas was subjected to additional testing at CHC on May 3, 2016 and is awaiting further "individualized" assessment by the NYPD Medical Division.

Accordingly, Vargas is left with no objective way to determine what further assessments she will be required to undergo or the "auditory ability" she is now required to meet with a hearing aid.  Thus, Vargas is subject to a hearing standard which is discriminatory because it applies only to hearing disabled officers and is unspecified, arbitrary, and discretionary.  Absent the ability to challenge the revised hearing standard to which she is now subjected, Vargas will continue to suffer unjust injury as a qualified, disabled person because she remains on restricted duty assignment.

### Point I
### The Allegations That Vargas Sets Forth In Her Supplemental Complaint Satisfy The Article III Standing Requirements

As an initial matter, the District Court is not limited to the face of the proposed supplemental complaint and may consider evidence outside the pleading where, as here, the defendants' objections to plaintiff's request place the "plaintiff's Article III standing in issue." *Alliance for Environmental Renewal, Inc. v. Pyramid Crossgates, Co.*, 436 F.3d 82, 88 (2d Cir. 2006).  In addition, although the subject matter jurisdiction of this Court and plaintiff's standing to challenge a discriminatory job standard are authorized by statute, Courts have determined a plaintiff need only establish the "same prerequisites needed for Article III [constitutional]

6

standing" in an ADA [statutory] case. *Bates v. United Parcel Service, Inc.,* 465 F.3d 1069, 1077 (9th Cir. 2006), *rev'd en banc,* 511 F.3d 974 (9th Cir. 2007).

Accordingly, following the well-worn path traversed by U.S. Supreme Court precedent, Vargas must show that (1) she suffered an injury in fact, i.e, one that is sufficiently "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) the injury is "fairly traceable" to the challenged conduct, and (3) the injury is "likely" to be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

In *Bates v. United Parcel Service, Inc.*, 465 F.3d 1069, 1077 (9th Cir. 2006), *rev'd en banc,* 511 F.3d 974 (9th Cir. 2007) the appellate court addressed *Lujan's* standards in deciding whether a class of hearing impaired employees and job applicants who could not pass a Department of Transportation (DOT) hearing standard, imposed by employer United Parcel Service (UPS) on all of its package-car drivers, had standing to sue for a violation of the ADA, among other claims. The drivers' claim involved whether the DOT hearing qualification, applicable only to drivers of heavy weight package vehicles, could be imposed by UPS upon drivers of light weight vehicles not regulated by DOT.  After a bifurcated bench trial on liability, the district court found UPS liable on claims for injunctive relief only (not addressing the damage claims), enjoined UPS from using the blanket hearing standard and required individualized assessment for the light-weight package car drivers.

On appeal, and as relevant here, the *en banc* Ninth Circuit Court determined that a driver not hired because he would fail the hearing test had a sufficiently "concrete and particularized" harm, in that the injury affected him "in a personal and individual way." *Bates*, 511 F. 3d at 986.

The court further found the harm was "directly traceable to a written policy" and was "caused and will continue to be caused by" the employer's use of the hearing test at issue. *Id.*

Likewise, all aspects of *Lujan*'s injury requirements are met here by plaintiff Vargas. First, and as a result of the revised hearing standard, Vargas has not been restored to full duty assignment, despite her satisfactory hearing test results, and this is a "concrete and particularized harm" in that this injury affects her "in a personal and individual way." *Lujan*, 504 U.S. at 560 n. 1; (*see also*, Meenan Dec. Ex. 1 ¶ 127). Second, at its core, the lawsuit filed by Vargas challenges the NYPD's hearing standard. "Where, as here, the harm is directly traceable to a written policy . . . there is an implicit likelihood of its repetition in the future." *Bates,* 511 F.3d at 986, citing *Armstrong v. Davis,* 275 F.3d 849, 861 (9th Cir. 2001).

The causation element of standing is also satisfied because Vargas's claimed injury – loss of a full duty assignment because of a hearing disability - was caused initially by a written policy which banned the use of hearing aids and continues with the revised hearing standard. In addition, there is a threat of future injury to Vargas based upon the NYPD's revised standard which makes clear that Vargas, as a hearing disabled police officer, is subject to "certification" every two years and faces "change of duty status" or "discipline" for failure to comply. For these reasons, Vargas satisfies the necessary standing requirements.

### A. Vargas Is Currently Subject To The Revised Hearing Standard Which She Seeks To Timely Challenge In A Supplemental Complaint To Make Her Relief In This Action Complete

It is well settled that leave to amend is to be granted by a district court "freely . . . when justice so requires," Fed. R. Civ. P. 15(a); *see also*, *Foman v. Davis*, 371 U.S. 178, 182 (1962). In complying with this directive, the Second Circuit has emphasized that "'[a] motion to amend

should be denied only for reasons such as undue delay, bad faith, futility of amendment, and perhaps most important, the resulting prejudice to the opposing party.'" *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n. 6 (2d Cir. 1987) (quoting *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)).

Futility is only a valid reason for denying a motion to amend where it is "beyond doubt that plaintiff can prove no set of facts in support of her amended claims." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (internal quotation marks omitted). A review of the supplemental pleading makes clear that Vargas has set forth sufficient facts in her supplemental complaint susceptible to a jury determination that the NYPD is subjecting her to a discriminatory qualification standard. This claim is not futile and this is certainly "not a case where the amendment came on the eve of trial and would result in new problems of proof." *State Teachers Retirement Bd.*, 654 F.2d at 856.

### B. Vargas's Claim That The 2015 Hearing Standard Is Discriminatory Is Not Futile

Vargas seeks to supplement her initial complaint with facts demonstrating the new hearing standard is a facially discriminatory qualification standard "because it focuses directly on [her] disabling" condition, hearing loss. *Bates*, 511 F.3d at 988. As noted by Sigrid Soli, Ph.D., in a declaration provided to the City in the *Phillips* case, the revised hearing standard "does not detail a hearing measurement which is job-related but, rather, directs a hearing impaired officer to undergo numerous clinical diagnostic test procedures using certain defined criteria and forms." (Meenan Dec. Ex. 4). In other words, the revised hearing standard, in general, measures hearing loss and the source of the hearing loss rather than measuring whether an officer has hearing sufficient to do her job.

9

Accordingly, a challenge to the revised hearing standard is viable under Title I to the ADA[2] which provides, "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . . terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). To sustain a successful ADA challenge, Vargas must prove " that [she] is (1) disabled under the Act, (2) "a qualified individual with a disability," and was (3) discriminated against "because of" the disability." *Bates*, 511 F.3d at 988.

In establishing the first step of the inquiry, the implementing regulations for Title I of the ADA provide necessary guidance. *Muller v. Costello*, 187 F.3d 298, 312 (2d Cir. 1999) (the EEOC's implementing regulations are entitled to "great deference.") Accordingly, and as defined under the regulations, Vargas, as an individual with a hearing impairment, is disabled as defined by the Act. A "physical impairment" is defined under the regulations as "[a]ny . . . condition . . . . affecting one or more body systems . . ." 29 C.F.R. § 1630.2(h). The regulations note that "various medical conditions commonly associated with age, such as hearing loss . . . . would constitute impairments with the meaning of the statute." See, 29 C.F.R. § 1630, App. Section 1630.2(h) (2014) (http://www.ecfr.gov); *see also*, § 1630.2(j)(3)(citing 2008 House Judiciary Committee Report at n. 6 )(ADA adopted the Rehabilitation Act definition of disability including hearing impairment).

---

[2] Vargas has also made claims that her employer violated the New York City Human Rights Law (NYCHRL), codified under the Administrative Code of the City of New York § 8-101 *et seq*. [See Meenan Dec. Ex. 1]. The NYCHRL is to be interpreted broadly and unlike the definition of "disability" found in the ADA, the NYCHRL defines "disability" solely in terms of impairments. *Romanello v. Intessa, S.p.A.*, 22 N.Y.3d 881, 885 (2013)(citing Administrative Code of the City of NY § 8-102 [16]). In addition, "the employer, not the employee, has the 'pleading obligation' to prove that the employee 'could not, with reasonable accommodation, satisfy the essential requisites of the job.'" [internal citations omitted]. *Romanello*, 22 N.Y.3d at 885. These distinctions will be made where relevant, but otherwise, the claims are assessed similar to claims under the ADA. See, *Parker v. Columbia Pictures*, 204 F. 3d 326, 331 n.1 (2d Cir. 2000).

There can be no dispute that the facts in the supplemental complaint make clear that Vargas, an individual with hearing loss, is disabled.

Also, the facts in the supplemental complaint can support the second step of the inquiry, in that these facts are susceptible to a determination by a fact finder that Vargas is a "qualified individual with a disability" subject to a qualification standard which discriminates against her. Discrimination under the ADA includes the use of "qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability . . . unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and consistent with business necessity." *Bates*, 511 F.3d at 989, citing 42 U.S.C. § 12112(b)(6); *see also*, H.R. Rep. No. 101-485 (III), at 40 (1990), reprinted in 1990 U.S.C.C.A.N. 445, 454-55, which is annexed hereto as an Addendum (It is discriminatory to administer tests to a person who has a disability that impairs sensory skills, "if the test reflects [the impairment] rather than reflecting the skills or aptitudes the test purports to measure.")

Where, as here, a qualification standard is invoked, "the question then becomes what proof is required with respect to being a 'qualified individual,' that is, one who can perform the job's essential functions." *Bates*, 511 F.3d at 989.  In assessing whether Vargas is a qualified hearing disabled individual, Title I regulations provide that a "qualified individual with a disability" is one who "satisfies the requisite skills, experience, education, and other job-related requirements of the employment positions such individual holds or desires, and who, with or without a reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2 (m).  There can be no doubt that Vargas satisfies the "requisite skill, experience,

education and other job-related requirements" of the police officer position as she qualified to be hired for the position in 2007 and was performing the job until her disabling injury in 2011.

The essential functions of a position are defined by the regulations as the "fundamental job duties of the employment position," as opposed to marginal functions of the position. 29 C.F.R. § 1630.2(n)(1).  If an individual "'can perform a job's essential functions, and therefore is a qualified individual, then the ADA prohibits discrimination' with respect to the employment actions outlined in 42 U.S.C. § 12112(a)." *Bates*, 511 F.3d at 989.  In the aggregate, these factors focus not only on the employer's judgment as to what functions are essential, but also on the totality of the circumstances. 29 C.F.R. § 1630.2(n)(3)(i)-(vii); *see also*, *Stone v. City of Mount Vernon*, 118 F.3d 92, 97 (2d Cir. 1997) (the considerations set out in the regulations are fact intensive).

Facts in the supplemental complaint are susceptible to a determination by a fact finder that Vargas had been satisfactorily performing the essential functions of her job which "are not to be confused with 'qualification standards,' which an employer may establish for a certain position." *Bates*, 511 F.3d at 989.  This distinction is crucial as "the statute does not require that [Vargas] meet each of [her] employer's established 'qualification standards," however, to show that [she] is "qualified." *Id*. "And, indeed, it would make little sense to require an ADA plaintiff to show that [she] meets a qualifications standard that [she] undisputedly cannot meet because of her disability and that forms the very basis of [her] discrimination challenge." *Id.*

Therefore, Vargas is a qualified disabled individual who remains on restricted duty assignment until she can pass the revised hearing standards.  A restricted duty assignment is an adverse employment action as it constitutes a substantial, material and undesirable change in

the terms and circumstances of her employment.  See *Payne v. N.Y.C. Police Dep't*, 863 F. Supp. 2d 169, 181 (E.D.N.Y. 2012)(plaintiff's adverse employment action prong satisfied where plaintiff was reassigned to undesirable precinct; stripped of his gun and shield, placed on modified duty, and moved from patrol to answering phones); *see also*, *Montgomery v. Chertoff*, 03 CV 5387 (ENV)(JMA), 2007 WL 1233551, at *12 (E.D.N.Y. April 25, 2007)("Not being assigned overtime can result in a material loss of pay and may be considered an adverse act.")

Thus, and as to the final element of proof supporting her ADA claim, the supplemental complaint alleges facts supporting a finding that Vargas is being discriminated against because the NYPD is using a qualification standard that has the "effect of discriminating on the basis of disability and/or screens out" Vargas, and other hearing disabled employees, by using a standard which does not "fairly and accurately measure [Vargas's] actual ability to perform the essential functions of the job." *Bates*, 511 F.3d 996 (internal citations omitted).  In essence, the revised hearing standard is not a job related measurement of the auditory ability of a police officer, rather it tests whether a police officer has hearing loss – without the use of a hearing aid - and the scope and extent of same, with additional undefined individualized assessments.

For all of the above reasons and prior to extensive discovery in this case, Vargas seeks to supplement her complaint with viable ADA claims.

<u>**Point II**</u>
**Vargas Has Properly Exhausted Her Administrative Remedies With The EEOC Relating To Disability Discrimination And Retaliation**

As a prerequisite to filing an ADA federal court action (42 U.S.C. § 12117), an aggrieved person must file a timely charge of discrimination with the United States Equal Employment Opportunity Commission (EEOC) before bringing an action, which is also a requirement before

bringing a suit under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq*.).  As a general rule, litigation is postponed until the EEOC either has dismissed the charge or has had at least 180 days to obtain voluntary compliance.  42 U.S.C. § 2000e-5(f) (1).  "On such dismissal or at the expiration of the prescribed period, the EEOC must give notice to the aggrieved person, such notice is commonly called a 'right to sue letter.'"  *Sheehan v. Purolator Corp*, 676 F.2d 877, 881 (2d Cir. 1981).  When the respondent to the EEOC charge is a local government, such as the City of New York, the notice of right to sue must be issued by the United States Department of Justice rather than by the EEOC. 42 U.S.C. § 2000e-5(f) (1).

Accordingly, on February 25, 2015,[3] Vargas filed a charge of discrimination with the EEOC, naming the City of New York, the New York City Police Department and the New York City Article II Medical Board as respondent parties.  The crux of the charge of discrimination was that the NYPD maintained a discriminatory hearing standard because it required hearing disabled officers, such as Vargas, to possess normal hearing without the use of a hearing aid.  (See Meenan Dec. Ex.  5).  Vargas also alleged in her EEOC charge that she was retaliated against and subject to adverse treatment for providing testimony by declaration in the *Phillips* case.  On September 11, 2015, the Civil Rights Division of the Department of Justice issued a "right to sue letter" and Vargas commenced a federal action by filing her complaint on October 15, 2015. (Meenan Dec. Ex. 6).  The federal action identifies the same causes of action and defendant parties as the February 2015 EEOC charge of discrimination.

---

[3] In April of 2015, Vargas amended her EEOC charge to include class action claims but the underlying facts and respondent parties remained the same.

In December of 2015, the NYPD issued a revised hearing standard and Vargas now seeks to supplement her complaint to challenge this hearing standard as discriminatory as well. Both the named defendants and the claims for disability-based discrimination and retaliation remain the same. There is no need for Vargas to exhaust an administrative remedy before the EEOC in order to proceed with a challenge to the revised hearing standard in federal court for the following reasons.

The Second Circuit has recognized certain exceptions to the general rule that a federal court complaint must be limited to the scope of the plaintiff's prior administrative complaint, finding one exception arises where further acts of discrimination are "carried out in precisely the same manner alleged in the EEOC charge." *Butts*, 990 F.2d at 1402-03.[4] In *Butts,* the Second Circuit noted its rationale for this exception as follows:

> [An incident that is precisely the same as one included in an EEOC charge but which takes place subsequent to the filing of the EEOC charge] might not fall within the scope of the EEOC investigation arising from the charge, since it might occur after the investigation was completed, . . . [h]owever, the values associated with exhaustion are not entirely lost because the EEOC would have had the opportunity to investigate, if not the particular discriminatory incident, the method of discrimination manifested in prior charged incidents. The fact that a charge alleging the same method was not resolved by the EEOC to the plaintiff's satisfaction makes it more likely that a new charge alleging the later incident would meet the same fate. Our holding that such conduct is "reasonably related" implicitly recognizes the cost to a plaintiff of requiring exhaustion in circumstances where the likelihood of a successful settlement is limited.

*Id*. at 1402-03.

---

[4] As noted in *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir. 1988), one of the holdings in *Butts* related to 42 U.S.C. § 1981 (and thus not relevant here) was subsequently overridden by statute. See, *Hawkins*, 163 F.3d at 693.

In the case of *Almendral v. New York State Office of Mental Health*, 743 F.2d 963 (2d Cir. 1984), a plaintiff challenged on appeal the district court's dismissal of claims relating to acts of discrimination occurring subsequent to the filing of her original EEOC charge.  The Second Circuit held that incidents that occurred after plaintiff had filed her EEOC charge were "reasonably related"  because they were "essentially the same" as conduct identified in her EEOC complaint; all of the challenged conduct involved the "alleged manipulation of the civil service rules for discriminatory reasons in order to appoint someone other than [plaintiff]." *Id.* at 967.  In addition, where, as here, the claim sought to be added by Vargas "[is] consistent with the plaintiff's original theory of the case" it is "reasonably related."  *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1100 (9th Cir. 2002). "If closely related incidents occur after a charge has been filed, additional investigative and conciliative efforts would be redundant." *Brown v. Puget Sound Elec. App. & Train. Trust*, 732 F. 2d 726, 730-31 (9th Cir. 1984).  "'To require a second filing by the aggrieved party [   ] would serve no purpose other than the creation of an additional procedural technicality.'" *Id.* (internal citations omitted).

Accordingly, the challenge to the revised hearing standard that Vargas seeks to add to her federal action does not require administrative exhaustion as a condition precedent to her supplementing her complaint.

### Conclusion

For all of the foregoing reasons, there is more than sufficient legal justification for the Court to exercise its discretion in permitting Vargas to supplement her complaint to include a challenge to the revised hearing standard.

Dated:  New York, New York
          June 6, 2016

                                        Respectfully  Submitted,

                                        Meenan & Associates, LLC
                                        *Attorneys for Plaintiffs*
                                        299 Broadway, Suite 1310
                                        New York, New York 10007
                                        (212) 226-7334

                                        By: _____
                                              Colleen M. Meenan (CM7439)

17