# ADDENDUM

| 101st Congress 2d Session | HOUSE OF REPRESENTATIVES | Rept. 101–485 Part 3 |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990

May 15, 1990.—Ordered to be printed

Mr. Brooks, from the Committee on the Judiciary, submitted the following

# REPORT

together with

## ADDITIONAL AND DISSENTING VIEWS

[To accompany H.R. 2273 which on May 9, 1989, was referred jointly to the Committee on Education and Labor, the Committee on Energy and Commerce, the Committee on Public Works and Transportation, and the Committee on the Judiciary]

[Including cost estimate of the Congressional Budget Office]

The Committee on the Judiciary, to whom was referred the bill (H.R. 2273) to establish a clear and comprehensive prohibition of discrimination on the basis of disability, having considered the same, report favorably thereon with an amendment and recommend that the bill as amended do pass.

The amendment is as follows:

Strike out all after the enacting clause and insert in lieu thereof the following:

SECTION 1. SHORT TITLE; TABLE OF CONTENTS.

(a) SHORT TITLE.—This Act may be cited as the "Americans with Disabilities Act of 1990".

(b) TABLE OF CONTENTS.—The table of contents is as follows:

Sec. 1. Short title; table of contents.
Sec. 2. Findings and purposes.
Sec. 3. Definitions.

TITLE I—EMPLOYMENT

Sec. 101. Definitions.
Sec. 102. Discrimination.
Sec. 103. Defenses.
Sec. 104. Illegal use of drugs and alcohol.
Sec. 105. Posting notices.
Sec. 106. Regulations.
Sec. 107. Enforcement.
Sec. 108. Effective date.

29–940

uses a wheelchair if, for example, the site's terrain and the building structure changes daily as construction progresses. The Committee recognizes that some accommodations that can easily be made in an office setting may impose an undue hardship in other settings.

The determination of undue hardship is a factual one which must be made on a case-by-case basis. Like Section 504 of the Rehabilitation Act, the burden is on the employer to demonstrate that the needed accommodation would cause an undue hardship.[31]

### Section 102(b)(6)—Qualification standards

This section prohibits the use of qualification standards, employment tests or other selection criteria that screen out or tend to screen out persons with disabilities, unless the criteria are shown to be jobrelated and consistent with business necessity.

If an employer uses a facially neutral qualification standard, employment test or other selection criterion that has a discriminatory effect on persons with disabilities, this practice would be discriminatory unless the employer can demonstrate that it is jobrelated and required by business necessity.[32]

The requirement that job selection procedures be job-related and consistent with business necessity underscores the need to examine all selection criteria to assure that they not only provide an accurate measure of an applicant's actual ability to perform the job, but that even if they do provide such a measure, a disabled applicant is offered a reasonable accommodation to meet the criteria that relate to the essential functions of the job at issue. It is critical that paternalistic concerns for the disabled person's own safety not be used to disqualify an otherwise qualified applicant.

### Section 102(b)(7)—Tests

Tests should measure what they purport to measure. It is discriminatory to select and administer tests to a person who has a disability that impairs sensory, manual, or speaking skills, if the test reflects impaired sensory, manual or speaking skills, rather than reflecting the skills or aptitudes the test purports to measure. An employer can use such a test if the test purports to measure sensory, manual, or speaking skills and those skills are related to the job, as required under this title.

### Section 102(c)—Medical examinations and inquiries

Historically, employment application forms and employment interviews requested information concerning an applicant's physical or mental condition. This information was often used to exclude applicants with disabilities, particularly those with "hidden" disabilities such as epilepsy, diabetes, emotional illness, heart disease and cancer, before their ability to perform the job was even evaluated.

In order to assure that misconceptions do not bias the employment selection process, this section sets up a process that begins

---

[31] *Prewitt* v. *U.S. Postal Service,* 662 F.2d 292, 308 (5th Cir. 1981), 29 CFR 1613.704(a).

[32] *See, Prewitt* v. *U.S. Postal Service,* 662 F.2d 292, 306 (5th Cir., 1981), 45 CFR 84.13; 28 CFR 42.512; 29 CFR 32.14; 42 Fed. Reg. 22688, ¶ 17 (1977).