UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YAQUELIN VARGAS,

                  Plaintiff,

     v.

THE CITY OF NEW YORK, NEW YORK
CITY POLICE DEPARTMENT ARTICLE II
MEDICAL BOARD,

              Defendants.

**Civil Action No. 15-cv-8016 (ER)(RLE)**

**THIRD AMENDED COMPLAINT**

## I.    NATURE OF THE ACTION

1. This is an employment related civil rights action brought by police officer Yaquelin Vargas ("Vargas") against her employer, the City of New York.

2. Vargas seeks to redress disability discrimination by the New York City Police Department ("NYPD") with respect to an employment policy in effect until December of 2015 which required tenured police officers to possess normal hearing without the use of hearing aids ("hearing aid ban").

3. In December of 2015, the Police Commissioner adopted a new policy defined as "Testing Requirements For NYPD Auditory Assessments (For Those Members Who Do Not Pass The Initial Screening)."

4. Vargas is hearing disabled and qualified to perform the essential functions of a police officer who is adversely effected by both of the above noted policies.

5. As a result of her hearing loss disability and the hearing aid ban policy, Vargas has been deemed medically unqualified by her employer to perform the duties of a New York City police officer to date.

6. Also, Vargas is seeking an appropriate remedy for adverse actions she has experienced as a result of (a) providing testimony for two other hearing disabled officers in another federal case and (b) filing the instant action.

## II. JURISDICTION AND VENUE

7. The claims asserted herein arise under both federal and state law.

8. The jurisdiction of this Court is sought pursuant to 28 U.S.C. Sections 1331 and 1343 (a)(3) and (4), 2201 and 2202 of the Declaratory Judgment Act, Title I of the Americans with Disabilities Act of 1990 (as amended by the ADA Amendments Act of 2008), 42 U.S.C. §12101, *et seq.*

9. Vargas seeks the pendent/supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367 in conjunction with claims alleging violations of the New York City Human Rights Law, N.Y.C. Admin. Code §8-101, *et seq.*

10. The claims for violations of the New York City Human Rights Law are based upon the same operative facts supporting the federal claims.

11. The values of the rights in question is in excess of $100,000 exclusive of interest and costs.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and (c). The acts and conduct complained of herein occurred in substantial part in this District and the Defendant the City of New York maintains its principal place of business in this District.

## III. JURY TRIAL DEMANDED

13. Plaintiff demands a trial by jury on each and every one of her claims as set forth below.

## IV. PARTIES

**Plaintiff Yaquelin Vargas**

14. Yaquelin Vargas [Vargas] is a New York City Police Department Police Officer, a citizen of the United States and a resident of the State of New York, City of Yonkers.

15. At all times relevant to this action Vargas was employed by the New York City Police Department (NYPD) as a Police Officer and is currently assigned to restricted duty assignment because of her hearing disability.

16. Vargas began her police service on January 10, 2007.

17. Vargas has always performed her duties and functions as a member of the New York City Police Department in a satisfactory manner.

18. Vargas is a qualified person with a disability as defined by the Americans with Disabilities Act, as amended [ADAAA], codified at 42 U.S.C. §12101, *et seq.,* because she has a hearing impairment as a result of hearing loss she sustained in the line of duty.

19. Vargas wears a hearing aid to assist her with her hearing loss.

20. Vargas is qualified to perform all of the essential functions of her job as a New York City Police officer while wearing a hearing aid.

**The Defendant Parties**

21. Defendant the City of New York ("the City") is a municipal entity existing under the laws and Constitution of the State of New York.

22. Defendant the New York City Police Department ("NYPD") is an agency of the City of New York that is charged with providing law enforcement services to the residents of the City.

23. Until December of 2015, the City of New York by and through the Police Department maintained a policy that required officers to possess normal hearing without

3

the use of hearing aids.

24. The New York City Police Department Article II Medical Board ("Medical Board") is an agent of the City of New York and joint employer of the plaintiff.

25. The Medical Board is required by statute to arrange for, and pass upon, all medical examinations of police officers, investigate all essential statements and certifications by or on behalf of a member of the police department in connection with an application for disability retirement. N.Y.C. Admin. Code Section 13-123 b.

26. The Medical Board makes its determination and recommendations to the Police Commissioner.

27. The Medical Board maintains its offices within the Medical Division of the NYPD and shares staff, office space, phones and office equipment with the Medical Division of the NYPD.

28. The Medical Board is staffed by physicians who are paid for their services by the City of New York.

29. The Medical Board ratifies, condones and sanctions the NYPD hearing aid ban policy in that the Medical Board recommended that Vargas was unqualified to work as a police officer due to hearing loss, without consideration as to whether or not she had hearing sufficient to perform her job with hearing aids.

**Specific Facts**

30. Plaintiff Yaquelin Vargas ("Vargas") was hired by the New York City Police Department on January 10, 2007, having qualified medically, physically and psychologically for service.

31. After graduating from the police academy Vargas was assigned to patrol duties in the Bronx.

32. On September 13, 2011, Vargas sustained ringing and pain in her right ear while participating in a semi-annual firearms training cycle at the outdoor firing range.

33. Vargas immediately and appropriately advised her employer of her right ear injury on September 13, 2011.

34. On September 22, 2011, Vargas was evaluated by Dr. Derek Soohoo, M.D., an otolaryngologist, for right ear ringing and pain and he diagnosed her with severe-to-moderately severe sensorineural hearing loss in the right ear.

35. On October 5, 2011 and pursuant to NYPD protocols for injured officers, P.O. Vargas reported her injury to Lt. Valenti at the NYPD Medical Division in Queens and he directed her to see Dr. Peter Galvin.

36. On October 5, 2011, Vargas was removed from full duty by Dr. Galvin and placed on restricted duty by the NYPD Medical Division after a pure tone examination revealed that she had hearing loss in her right ear.

37. In a restricted duty status, Vargas is not permitted to carry a firearm and not permitted to perform full duty; she may not perform overtime, she is not eligible for promotion or career advancement and may only perform clerical duty assignments.

38. From October 5, 2011 to the present, Vargas has been on restricted duty and required to report (when not on sick report), at least, every month to the Medical Division for follow-up examinations because of her restricted duty status.

39. After being tested at the Medical Division on October 5, 2011, Vargas was referred on October 10, 2011 by the NYPD Medical Division to the Center for Hearing and Communication, an outside consulting agency, which tested her hearing and confirmed the loss of hearing in her right ear.

40. On October 21, 2011, the Center for Hearing and Communication ("CHC")

advised Vargas she was a candidate for amplification as her hearing loss would receive benefit with the use of a hearing aid.

41. The CHC evaluation confirmed severe to moderate sensorineural hearing loss in Vargas' right ear.

42. Since Vargas sustained hearing loss to her right ear while in the performance of her duties as a police officer, the NYPD was responsible for the payment for a hearing aid for Vargas.

43. The NYPD Medical Division refused to authorize such payment.

44. On November 11, 2011, Vargas was caused to report to Dr. Kornreich at the NYPD Medical Division and she provided him with a letter from her private doctor advising that Vargas needed a hearing aid.

45. Once Dr. Kornreich learned that Vargas required the use of a hearing aid to assist her with her hearing loss, he began an internal process to separate her from employment because of the NYPD hearing aid ban.

46. On December 12, 2011 Vargas was directed by Dr. Kornreich to see Lt. Valenti at the Medical Division office located at LeFrak Plaza.

47. At the Medical Division, Vargas was required to undergo a pure tone audiogram hearing examination.

48. Lt. Valenti then advised Vargas that there was no change in her hearing loss.

49. Lt. Valenti further advised Vargas that she could not work with a hearing aid, without considering whether or not she was qualified to perform the essential functions of her job with a hearing aid.

50. Vargas is a qualified person with a disability and capable of performing all of the essential functions of her employment with a hearing aid.

51. Lt. Valenti then advised Vargas he would not provide authorization for her to see an audiologist to address her hearing loss, and that she would be processed for involuntary retirement due to her disabling hearing loss.

52. These events caused Vargas extreme anxiety, stress and humiliation as she was forced to attend different medical appointments within the Police Department only to be told she would lose her job, and no assistance was available to address her hearing loss.

53. On February 15, 2012, Vargas was fitted by her private audiologist, Dr. Barbara Tartaglia for a hearing aid at her own expense.

54. Vargas was then contacted through police communications and advised that she needed to see Deputy Chief Surgeon Ted Reich, a medical doctor, at the Police Department's Medical Division, located in Queens.

55. Dr. Reich advised Vargas that she needed to be evaluated by Dr. Marc Kramer, a Police Department consultant.

56. Dr. Kramer is a well-known advocate for the hearing aid ban and not an objective medical provider.

57. On October 29, 2013 Vargas was seen by Dr. Marc Kramer, as directed by Dr. Reich.

58. Dr. Kramer conducted testing of Vargas while wearing a hearing aid which he is not qualified to do.

59. Dr. Kramer, thereafter, refused to provide Vargas with a copy of her hearing test results, yet made written recommendations on November 8, 2013 to the NYPD.

60. Based upon Kramer's recommendations, on December 19, 2013, NYPD Chief Surgeon Eli Kleinman, on behalf of the Police Commissioner, recommended that Vargas be separated from police service due to her hearing loss disability.

61. On January 31, 2014, Deputy Chief Surgeon Theobald Reich of the Medical

Division referred Vargas to Dr. Samuel H. Selesnick, an otolaryngologist at Weill Cornell Physicians, for an audiological evaluation.

62. Vargas was caused to suffer continuing anxiety, stress and humiliation and she was again bounced around to yet another doctor.

63. On February 5, 2014, Vargas was examined by Dr. Selesnick who advised that Vargas had right-sided hearing loss and could benefit from a conventional hearing aid or a cochlear implant.

64. Dr. Selesnick noted that if a conventional hearing aid or a cochlear implant was obtained this would most likely give Vargas the ability to localize sound in her environment.

65. Dr. Selesnick's reports were referred to Dr. Reich.

66. Despite these recommendations, the NYPD refused to permit her to return to work in a full duty capacity.

67. Rather, the NYPD continued its internal process to terminate Vargas's employment deliberately intensifying her harassment, stress and anxiety because of the hearing aid ban policy, and in retaliation for Vargas's voiced opposition to the policy.

68. On March 14, 2014, the Medical Board determined the evidence presented before it demonstrated that Vargas was unable to perform police duties and recommended that she be separated from police service.

69. Despite having the authority and obligation to do so, the Medical Board took no effort to determine whether Vargas was qualified with a hearing aid to perform the essential functions of her job.

70. The Medical Board discounted all of the objective and relevant medical information provided to them by Vargas demonstrating she was qualified to perform her job.

71. Vargas has been subjected to an ongoing internal administrative process within the Police Department designed to terminate her employment, despite the fact she has hearing sufficient to perform her job with a hearing aid.

72. Vargas has been subjected to ongoing stress, anxiety and humiliation caused by harassment by her employer, including multiple referrals for examinations by NYPD medical personnel for no legitimate purpose, examinations by· the Medical Board, multiple hearing examinations for no legitimate purpose, the unjustified examination by Marc Kramer and the deferral for termination of her employment.

73. Vargas has lost career opportunities and advancements and increased pension benefits in the future because she remains on restricted duty status.

74. Vargas has no idea when, or if, she will be forced to retire as her future employment is unknown causing additional stress, anxiety, humiliation, sleeplessness, and loss of appetite.

75. Vargas wishes to remain employed to her 65th birthday.

**Facts Relevant to Retaliation**

76. In addition, Vargas has suffered ongoing adverse actions by her employer because she complained about the treatment of other hearing disabled officers, provided testimony in a federal civil action, and filed this civil action, and the details are set forth as follows.

77. On or about June 20, 2013, Vargas participated as an identified witness in a hearing disability case for two other police officers which was then pending in federal court, entitled *Phillips and Carione* v. *City of New York, et al.,* 1:11-cv-6685 (KPF).

78. Vargas provided a declaration as a witness in support of the claims raised by the plaintiffs that they were being discriminated against by the NYPD due to hearing loss.

79. Since that time, Vargas has been adversely treated by and through acts of the NYPD.

80. Vargas learned she was the subject of an internal affairs investigation.

81. IAB Investigators appeared at her relative's home and questioned her family members about their knowledge of her hearing loss.

82. Investigators advised family members that Vargas sustained hearing loss because she sat too close to a speaker in her church.

83. On April 17, 2014, Vargas was directed to report to the office of Internal Affairs, Group 11 where she was questioned by Lt. McKeon and Detective Morrison for no justifiable reason.

84. The investigation by Internal Affairs had no legitimate purpose and business justification and was done to harass, alarm, intimidate and annoy Vargas for providing testimony adverse to the NYPD.

85. There was no finding of misconduct against Vargas nor was there any legitimate basis to investigate her for hearing loss.

**Condition Precedent**

86. On or about February 26, 2015, Vargas filed a charge for disability discrimination and retaliation with the New York District Office of the U.S. Equal Employment Opportunity Commission and subsequently filed an amended charge on April 3, 2015.

87. Vargas received a right to sue letter from the U.S. Department of Justice, Civil Rights Division dated September 11, 2015 pursuant to the appropriate processing protocols of the agency for the charges that she filed.

88. Within 90 days of the receipt of the Notice, Vargas timely filed an action on October 13, 2015.

89. On or about December 6, 2016 Vargas filed another charge for disability discrimination and retaliation with the New York District Office of the U.S. Equal Employment Opportunity Commission to include actions, events and the revised policy that had occurred and been promulgated since the filing of her lawsuit on October 13, 2015.

90. Thereafter, Vargas received a right to sue letter from the U.S. Department of Justice, Civil Rights Division dated May 24, 2017, which is annexed hereto as an Addendum.

91. Less than 90 days have elapsed since Vargas received this right to sue letter; thus Vargas has timely asserted all claims contained herein.

**Police Commissioner's December 2015 Hearing Standard**

92. By letter dated December 10, 2015, the NYPD announced the adoption of a revised hearing standard entitled "Testing Requirements for NYPD Auditory Assessments For Those Members Who Did Not Pass Initial Screening."

93. Vargas is now subject to this protocol which is a hearing qualification standard.

94. Only officers, such as Vargas, who complain of hearing loss are subject to the revised December 10, 2015 hearing qualification standard.

95. Tenured officers who do not sustain hearing loss are not subjected to a hearing qualification standard after being hired.

96. This qualification standard discriminates against hearing disabled officers, such as Vargas, because it requires officers with hearing disabilities to endure a range of clinical medical testing designed to reveal the nature or severity of the hearing disability when such inquiry is not job related and consistent with business necessity.

97. For example, the revised hearing standard requires Vargas to submit to a range of clinical diagnostic testing procedures which includes pure tone audiometry by both air

conduction and bone conduction; contralateral masking, where appropriate; speech reception thresholds under earphones for each ear; maximum speech sound discrimination scores under earphones for each ear; testing for otoacoustic emissions using certain defined criteria such as a minimum of four (4) frequencies, and also, testing for middle ear impedance.

98. The revised hearing standard discriminates against hearing disabled officers, such as Vargas, because it lacks empirically based criteria which support the hearing critical job tasks identified as essential job functions within the qualification standard.

99. The revised hearing standard discriminates against hearing disabled officers, such as Vargas, because it lacks specific objective measures of functional hearing required of all officers.

100. In addition, this qualification standard requires that Vargas submit all of the required clinical testing data to the Medical Division for "an individualized assessment of . . . auditory ability as it relates to the essential functions necessary for full duty uniformed services."

101. The revised standard goes on to state that the individualized assessment will be made "in consultation with an expert(s) in the field."

102. The individualized assessment is not otherwise defined.

103. The individualized assessment is arbitrary in that there is no identifiable, objective, empirically based hearing measurements which will be used by the Medical Division and its experts in making these "assessments."

104. The individualized assessment is discretionary in that there are no identifiable, objective, empirically based hearing measurements which will be used by the Medical Division and its experts in making these "assessments."

105. The revised standard prohibits the use of a BTE (behind the ear device) by a hearing disabled officer absent sufficient identifiable, objective and empirically based support for such a prohibition.

106. The revised hearing standard treats hearing disabled officers, such as Vargas, differently than non-hearing disabled officers in that hearing disabled officers are required to have their hearing "certified" every two years and non-hearing disabled officers do not need to provide such a certification.

107. The revised hearing standard requires hearing disabled officers to submit completed audiometric data forms, provide standardized recorded materials for all testing, and a written narrative including history and clinical impressions which is not job related or based upon business necessity.

108. The revised hearing standard was deliberately designed in scope, content and effect to obstruct, frustrate, impede and prevent hearing disabled officers from medically qualifying for employment using a hearing aid.

109. Despite Vargas providing testing results to her employer from the Center for Hearing and Communication demonstrating that she had hearing sufficient to perform her job in 2012, the defendants have failed to reinstate Vargas to full duty assignment, and thereby have continued to limit and segregate her on restricted duty assignment and in such a way that adversely affects her employment opportunities and status.

110. Vargas has continued to be humiliated by her segregation due to hearing loss, despite demonstrating she had hearing sufficient to do her job in 2012 with hearing aids.

111. After the December 2015 hearing standard was adopted, the police department continued to reject the hearing test results demonstrating that Vargas was qualified to perform her job with a hearing aid.

112. For example, on April 27, 2016, Vargas was directed to appear before Deputy Chief Surgeon Ted Reich who then ordered Vargas to engage in more hearing testing and evaluation, claiming additional testing was required by the December 2015 protocols.

113. As a consequence, Vargas was ordered by Reich to go back to the Center for Hearing and Communication for testing, despite the fact her prior testing indicated she had sufficient hearing with a hearing aid.

114. Reich was rude and dismissive and refused to respond to Vargas's questions when she asked why further testing was necessary when she previously provided all the information to the Medical Division that was needed.

115. As directed by Reich, Vargas appeared at the Center for Hearing and Communication on May 3, 2016.

116. Vargas was then directed by Dr. Reich to obtain clearance from her medical doctor to wear a hearing aid.

117. Vargas had previously provided the Medical Division with medical clearance indicating she could wear a hearing aid.

118. Vargas returned to her medical doctor as directed to again obtain medical clearance and provided this information to Dr. Reich.

119. Vargas was subsequently contacted through D.I. Donnelly at the Medical Division and advised that the Medical Division wanted her to be tested again with a hearing aid, despite the fact Vargas was already tested with a hearing aid multiple times over the past several years.

120. In addition, and for no legitimate business purpose, Vargas was directed to drive to the Medical Division main office in Flushing Queens to pick up an authorization which was required before she could have the testing done.

121. The authorization could have simply been faxed to her.

122. Thereafter, on August 15, 2016, Vargas received a phone call directing her to report to the Medical Unit at the 50 Pct. on August 16, 2016.

123. There was no legitimate purpose or justification for directing Vargas to report to the

50 Pct. Medical Unit which is part of the Medical Division of the police department.

124. At the 50 Pct. Medical Unit, Vargas was caused to wait from 7:15 a.m. until 9:35 a.m. when she was approached by a police lieutenant who advised her she did not have to be there, but she needed to meet with Lt. Valenti at the Medical Division office in Flushing Queens and he further advised she would be contacted about that appointment.

125. On September 6, 2016, Vargas was contacted by Lt. Valenti who advised her she needed to go back to the Center for Hearing and Communication ("CHC") for a test using the form that was provided to her.

126. Thereafter, Vargas returned yet again for additional testing at CHC and provided the testing results to the Medical Division.

127. The testing results demonstrated she had hearing sufficient to do her job with a hearing aid.

128. These test results were disregarded by Medical Division Chief Surgeon Eli Kleinman ("Kleinman") and consultant Marc Kramer ("Kramer").

129. These test results were disregarded because: (a) Vargas engaged in protected activities by providing testimony in another hearing aid case and (b) filed this civil action and (c) challenged Kleinman's and Kramer's treatment of hearing disabled officers.

130. These test results were also disregarded by Kleinman and Kramer because they deliberately and intentionally discriminate against hearing disabled officers by not permitting them to work wearing a hearing aid.

131. On or about June 21, 2017, Vargas provided to the Medical Division hearing test results performed by Michael Bergen, AuD, CCGA on January 21, 2017.

132. Again, these test results demonstrated that Vargas had hearing sufficient to perform her job with a hearing aid.

133.  These test results were intentionally and deliberately disregarded by Kleinman and Kramer in retaliation against Vargas because: (a) Vargas engaged in protected activities by providing testimony in another hearing aid case and (b) filed this civil action and (c) challenged Kleinman's and Kramer's treatment of hearing disabled officers.

134.  Also, Kleinman and Kramer deliberately and intentionally disregarded these test results because they refuse to permit Vargas to work wearing a hearing aid based on stereotypes and assumptions about hearing aids which have no scientific basis or support.

135.  The City of New York has permitted these individuals to remain as decision makers with respect to Vargas's qualifications to perform her job despite knowing that both of these individuals are discriminating and retaliating against her.

136.  On July 5, 2017, Vargas was again directed to appear before the Article II Medical Board by Kleinman.

137.  Vargas provided her hearing test results and was advised that she was being directed to be evaluated by Marc Kramer.

138.  Vargas advised she would not be evaluated by Marc Kramer as he is discriminating against her.

139.  Subsequently, Vargas was advised by Sgt. Antonelli of the Medical Division that she did not have to see Marc Kramer and there would be a meeting and a decision reached about her status.

140.  Both Marc Kramer and Eli Kleinman again deliberately made a determination that Vargas could not return to work wearing a hearing aid.

141.  As a result, on or about July 12, 2017, Vargas was advised by Sgt. Antonelli that the Medical Board had determined she was to be separated from police service because of her hearing disability.

142. The Medical Board deliberately and intentionally rejected her hearing test results and the fact that she was qualified to perform her job with a hearing aid after consultation with Marc Kramer and/or Eli Kleinman.

143. Vargas has not been restored to full duty and will be separated from police service, despite demonstrating she has hearing sufficient to do her job.

**Termination from Employment**

144. By letter dated July 10, 2017, NYPD hearing consultant Marc Kramer advised Eli Kleinman, Supervising Chief Medical Officer of the NYPD, in writing, that Vargas had hearing insufficient to perform her job as a police officer.

145. The July 10, 2017 Kramer letter was provided to the Article II Medical Board.

146. On July 19, 2017 the Article II Medical Board, consisting of Vasilios Sierros, MD, Sounder Eswar, MD and Paul A.C. Greenberg, MD, relied upon the information provided by Kramer to conclude the Vargas failed to meet the "Hearing Requirements For Incumbent Uniformed Members of the Service dated December 11, 2015."

147. The Article II Medical Board further concluded on July 19, 2017 that Vargas is disabled from performing the duties of a New York City Police Officer "due to right hearing loss."

148. The Article II Medical Board further recommended to the New York City Police Pension Fund that it approve the Police Commissioner's application for Vargas to be involuntarily retired from police service.

149. The involuntary retirement process involving Vargas was initiated by Kleinman with the assistance and cooperation of Kramer.

150. On January 10, 2018, the New York City Police Pension Fund granted the Police Commissioner's application for "disability" retirement based upon hearing loss.

151.   On January 12, 2018, Vargas was advised that she had passed examination # 6540.00 for the civil service title: Sergeant(Police)(Promotion).

152.   Her passing score was 81.399 and her list number is 1292.

153.   Effective January 31, 2018, Vargas was involuntarily removed from police service because of her hearing loss disability.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE AMERICANS WITH DISABILITIES AMENDMENTS ACT, 42 U.S.C. §12101, *ET SEQ*. (ADAAA) FOR DISCRIMINATION (CITY OF NEW YORK AND MEDICAL BOARD)

154.   The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

155.   The defendants have violated plaintiff's rights under the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq* (ADAAA) by maintaining a hearing standard which discriminates against hearing disabled officers, and by failing to accommodate hearing disabled officers by permitting the use of hearing aids.

156.   Plaintiff has suffered injuries and damages, including the loss of employment; back pay, front pay, pension and benefits, loss of career advancement opportunities; extreme stress; humiliation; embarrassment; mental anguish; and damage to her reputation.

157.   Plaintiff requests compensatory damages and equitable relief (declaratory and injunctive relief),  attorneys' fees and costs in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE AMERICANS WITH DISABILITIES AMENDMENTS ACT, 42 U.S.C. §12101, *ET SEQ.*, (ADAAA) FOR RETALIATION (CITY OF NEW YORK)

158.   The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

159.   Defendant City of New York violated the plaintiff's rights under the ADAAA

by retaliating against the plaintiff because: (a)Vargas engaged in protected activities by providing testimony in another hearing aid case, (b) filed this civil action, and (c) challenged Kleinman's and Kramer's treatment of hearing disabled officers.

160.   Plaintiff has suffered injuries and damages, including ongoing harassment, meritless internal investigations, extreme stress, the loss of employment; back pay, front pay, pension and benefits, loss of career advancement opportunities; humiliation; embarrassment; mental anguish; and damage to her reputation.

161.   Plaintiff requests compensatory damages and equitable relief (declaratory and injunctive relief), attorneys' fees and costs in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW, ADMINISTRATIVE CODE §8-107, *ET SEQ.*, BASED UPON DISABILITY (CITY OF NEW YORK AND MEDICAL BOARD)**

162. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

163. Defendants have violated plaintiff's rights under the New York City Human Rights Law §8-107, *et seq.*, by maintaining a hearing standard which discriminates against hearing disabled officers, and by failing to accommodate hearing disabled officers by permitting the use of hearing aids.

164. Plaintiff has suffered injuries and damages, including ongoing harassment, meritless internal investigations, extreme stress, the loss of employment; back pay, front pay, pension and benefits, loss of career advancement opportunities; humiliation; embarrassment; mental anguish; and damage to her reputation.

165. Plaintiff requests compensatory damages and equitable relief (declaratory and injunctive), attorneys' fees and costs in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW, ADMINISTRATIVE CODE §8-107, ET *SEQ.*, BASED UPON RETALIATION (CITY OF NEW YORK)

166. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

167. Defendant the City of New York violated plaintiff's rights under the NYCHRL by retaliating against the plaintiff because: (a) Vargas engaged in protected activities by providing testimony in another hearing aid case and (b) filed this civil action and (c) challenged Kleinman's and Kramer's treatment of hearing disabled officers.

168. Plaintiff has suffered injuries and damages, including ongoing harassment, meritless internal investigations, extreme stress, the loss of employment; back pay, front pay, pension and benefits, loss of career advancement opportunities; humiliation, embarrassment; mental anguish; and damage to her reputation.

169. Plaintiff requests compensatory damages and equitable relief (declaratory and injunctive relief), attorneys' fees and costs in an amount to be determined at trial.

**WHEREFORE,** plaintiff demands the following relief jointly and severally against all of the defendants:

a. Compensatory damages and equitable relief in an amount and manner to be determined at the time of trial, including for any loss of back pay, front pay, and pension benefits, and for emotional damages;

b. The convening and empaneling of a jury to consider the merits of the claims;

c. Attorneys' fees and costs;

d. Injunctive and declaratory relief against all defendants; and

e. Such other and further relief as this court may deem appropriate and equitable.

Dated: New York, New York
August 10, 2018

Respectfully Submitted,

Meenan & Associates, LLC
*Attorneys for Plaintiff*
299 Broadway, Suite 1310
New York, New York 10007
P: (212) 226-7334
E: cmm@meenanesqs.com

By: _____
Colleen M. Meenan (CM 7439)

# Addendum



U.S. Department of Justice

Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

CERTIFIED MAIL

7014 3490 0000 6312 1898

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4701*
*Washington, DC 20530*

May 24, 2017

Ms. Yaquelin Vargas
c/o Colleen M. Meenan, Esquire
Law Offices of Meenan & Assocs.
299 Broadway
*Suite 1310*
New York, NY  10007

Re:  EEOC Charge Against City of New York, New York Police Dept.
        No. 520201700870

Dear Ms. Vargas:

Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action against the above-named respondent under:  Title I of the Americans with Disabilities Act of 1990,  42 U.S.C. 12111, et seq., and,  Title V, Section 503 of the Act, 42 U.S.C. 12203.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC New York District Office, New York, NY.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

T. E. Wheeler, II
Acting Assistant Attorney General
Civil Rights Division

by Karen L. Ferguson
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: New York District Office, EEOC
   City of New York, New York Police Dept.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YAQUELIN VARGAS,

             Plaintiff,

    v.

THE CITY OF NEW YORK, NEW YORK
CITY POLICE DEPARTMENT ARTICLE II
MEDICAL BOARD,

             Defendants.

**Civil Action No. 15-cv-8016 (ER)(RLE)**

## THIRD AMENDED COMPLAINT

Respectfully Submitted,

Meenan & Associates, LLC
By: Colleen M. Meenan, Esq. (CM 7439)
    Shelley Ann Quilty-Lake (SL 1204)
*Attorneys for Plaintiffs*
299 Broadway, Suite 1310
New York, New York 10007
Ph. No. (212) 226-7334